**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TOUCHSTONE RESEARCH GROUP LLC, JOHN DOES 1-50 AND JANE DOES 1 -50, | |
| Plaintiffs, | **ECF** |
| DEPARTMENT OF DEFENSE; JAMES MATTIS, Secretary of Defense; ROBERT WILKE, Under Secretary of Defense for Personnel and Readiness; MICHAEL V. SORRENTO, Director of the Defense Manpower Data Center; PETER A. ROBINSON, chief of the Freedom of Information and Privacy Office - Army Human Resources Command, in their official capacities; and the UNITED STATES OF AMERICA, | Case No. 1:18-cv-03451-OTW |
| | **AMENDED COMPLAINT FOR DECLARATORY JUDGEMENT AND INJUNCTIVE RELIEF** |
| Defendants. | |

Plaintiff TOUCHSTONE RESEARCH GROUP LLC, through and by its undersigned

counsel, complaining of the above Defendants, alleges upon information and belief as follows:

**THE PARTIES**

1. Plaintiff TOUCHSTONE RESEARCH GROUP LLC (hereinafter referred to as

   "TOUCHSTONE) is a Delaware Limited Liability Company and maintains its principal

   place of business at 244 Fifth Avenue, New York, New York 10001.

2. Plaintiff TOUCHSTONE is a research-based service company that contracts professional

   researchers at the various government records facilities who submit requests for certain

   records to the facilities on behalf of veterans, their families and other clients. These clients

   have specifically retained TOUCHSTONE to retrieve, verify, and expedite the delivery of

   their records by executing a limited Power of Attorney ("POA") granting TOUCHSTONE

   and its researchers legal authority for the express purpose of retrieving military records on

   their behalf by paying a fee for such service.

1

3. Plaintiff TOUCHSTONE also brings and maintains this action for the benefit of its clients John Does and Jane Does who are veterans of the U.S. military and/or their families or others whose interests may arise and/or appear during the course of this action.

4. Plaintiffs JOHN DOES 1 through 50 are individuals who reside within the jurisdiction of the United States District Court for the Southern District of New York within the last two years of having retained Plaintiff TOUCHSTONE to perform specific services on behalf of each individual.

5. Plaintiffs JANE DOES 1 through 50 are individuals who reside within the jurisdiction of the United States District Court for the Southern District of New York within the last two years of having retained Plaintiff TOUCHSTONE to perform specific services on behalf of each individual.

6. Plaintiffs JOHN DOES 1 through 50 are individuals that have each specifically retained TOUCHSTONE to retrieve, verify, and expedite the delivery of their individual records by executing a limited Power of Attorney ("POA") granting TOUCHSTONE and its researchers legal authority for the express purpose of retrieving military records on their behalf.

7. Plaintiffs JANE DOES 1 through 50 are individuals that have each specifically retained TOUCHSTONE to retrieve, verify, and expedite the delivery of their individual records by executing a limited Power of Attorney ("POA") granting TOUCHSTONE and its researchers legal authority for the express purpose of retrieving military records on their behalf.

8. Plaintiffs JOHN DOES 1 through 50 and JANE DOES 1 through 50 have granted Plaintiff TOUCHSTONE and their researchers a limited power of attorney "to do and perform all and every act and thing whatsoever necessary to be done in and about the specific and limited premises (i.e. obtaining the individual's military records)[…] "as might or could be done if personally present, with full power of substitution and revocation, hereby ratifying

and confirming all that said attorney shall lawfully do or cause to be done by virtue

hereof."

9.  Defendant DEPARTMENT OF DEFENSE (DoD) is a department of the U.S. government

which has a main address at the Office of the Secretary, 1400 Defense Pentagon,

Washington, DC 20301-1400.

10. Defendant DoD is an agency of the federal government that oversees all military

operations and personnel.  The Privacy Act mandates that agencies that maintain a

"system of records" must "maintain in its records only such information about an

individual as is relevant and necessary to accomplish a purpose of the agency required to

be accomplished by statute or by executive order of the President." 5 U.S.C.A. § 552a

subsection (e) (1). The DoD is an agency that must comply with 5 U.S.C.A. § 552a

subsection (e)(1) in its maintenance of records.

11. Defendant DoD maintains the personal information of military service members and is a

"system of records" within the meaning of 5 U.S.C.A. § 552a subsection (a)(5).

Moreover, service members' personal information ("Private Information") is collected

by DoD into a "system of records."

12. Defendant DoD has the responsibility for maintaining and safeguarding Private

Information. DoD has authority to make, change, and enforce the rules and procedures

governing disclosure of Private Information and access to such information through the

various military branch record facilities, including the Defense Personnel Records

Information Retrieval System ("DPRIS").  DoD has authority to make, change, and

enforce the rules and procedures governing disclosure of Private Information and access

to such information through DPRIS.

13. Defendant JAMES MATTIS, the Secretary of Defense, has an office at the Pentagon and

a mailing address at 1000 Defense Pentagon, Washington, DC 20301-1000.

14. Defendant JAMES MATTIS is the Secretary of Defense. Secretary MATTIS has

ultimate authority to direct and control all DoD operations. This includes the authority to

make, change, and enforce the rules and procedures governing disclosure of Private Information and access to such information through the various military branch record repositories including DPRIS. Secretary MATTIS likewise has authority to direct subordinates within DoD to take all appropriate measures to bring the DoD's disclosure practices into compliance with law. Secretary MATTIS is sued herein in his official capacity.

15.  Defendant ROBERT WILKE, Under Secretary of Defense (Personnel and Readiness), has an office at the Pentagon and a mailing address of 4000 Defense Pentagon, Washington, DC 20301-4000.

16.  Defendant ROBERT WILKE is the Under Secretary of Defense for Personnel and Readiness ("USD(P&R)") which is part of DoD and has primary responsibility for personnel management. The USD(P&R) oversees the Defense Manpower Data Center, which operates DPRIS. The USD(P&R) has authority to make, change, and enforce the rules and procedures governing disclosure of Private Information and access to such information through the DPRIS. Wilke and the USD(P&R) likewise has authority to direct subordinates within DoD to take all appropriate measures to bring DPRIS and DoD's disclosure practices into compliance with law. Under Secretary Wilke is sued in his official capacity.

17.  Defendant MICHAEL V. SORRENTO, Director of the Defense Manpower Data Center ("DMDC") with an office and mailing address of 4800 Mark Center Drive, Alexandria, Virginia 22350-2900.

18.  The Defense Manpower Data Center ("DMDC"). DMDC is a component of DoD with primary responsibility for providing information on personnel during and after their affiliation with DoD. DMDC is the central repository for DoD human resources information, both current and historic.  DMDC manages the Defense Enrollment Eligibility Reporting System ("DEERS"), a DoD database from which the information in DPRIS is derived. DMDC operates and controls the DPRIS Website. DMDC Director SORRENTO

has the authority to make, change, and enforce rules and procedures governing disclosure of Private Information and access to such information through DPRIS. Defendant Director SORRENTO also has authority to direct others within DMDC to take appropriate measures to bring the DPRIS Website into compliance with law. Director SORRENTO is sued in his official capacity.

19. Defendant PETER A ROBINSON, Chief of the Freedom of Information and Privacy Office, Army Human Resources Command ("AHRC") has an office and mailing address at 1600 Spearhead Division Avenue, Dept. 107, Fort Knox, Kentucky 40122-5504.

20. AHRC is a component of DoD with primary responsibility for providing information on Army personnel during and after their affiliation with DoD. AHRC is the central repository for both recent and current Army human resources information. Defendant ROBINSON, as chief of AHRC's Freedom of Information and Privacy Office, has the authority to make, change, and enforce rules and procedures governing disclosure of Private Information and access to such information through AHRC. Chief ROBINSON also has authority to direct others within AHRC to take appropriate measures to bring the AHRC into compliance with law. Chief ROBINSON is sued in his official capacity.

21. Defendant UNITED STATES OF AMERICA is sued under 5 U.S.C. § 552a subsection (g) (1) (D) and 5 U.S.C. § 702 for actions of the Department of Defense and its agents and officials.

## JURISDICTION AND VENUE

22. This action arises under, and alleges violations of, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the Privacy Act of 1974, 5 U.S.C. § 552a.

23. The exercise of original jurisdiction by this Court over this action is proper under 28 U.S.C. § 1331 (federal question), 5 U.S.C. §§ 702, 704 (APA jurisdiction to review agency action), and 5 U.S.C. § 552a subsection (g) (1) (Privacy Act).

24.  This action is brought under and relief requested afforded under  5 U.S.C. § 706 (APA

relief), 5 U.S.C. § 552a subsection (g)(1)(B) & (D) and  28 U.S.C. § 2201 (declaratory

relief) as well as 28 U.S.C. § 2202  and 5 U.S.C. § 552a subsection (g)(3)(A) (injunctive

relief) as an actual controversy has arisen by and between the parties named herein

requiring a declaration of the rights and legal relations of Plaintiff vis-à-vis the

Defendants in promptly accessing and producing government records upon formal

request.  In addition, the Court has jurisdiction regarding Plaintiff's request for relief for

damages pursuant to 5 U.S.C. § 552a subsection (g) (4) (A).

25.  Also, this Court has jurisdiction to award costs and attorney fees pursuant to 28 U.S.C.

§ 2412 (costs), 5 U.S.C. § 552a subsection (g) (3) (B) & 5 U.S.C. § 552a subsection (g)

(4) (B) (intentional or willful government conduct)  in this action brought against the

Defendants.

26.  Venue is proper and appropriate for this action in this District pursuant to 28 U.S.C. §

1391(e)(1)(B) &(C) and 5 U.S.C. § 552a subsection (g)(5) because Plaintiff

TOUCHSTONE maintains its principal place of business in New York, New York,

Plaintiff individuals reside within the jurisdiction of this Court, and a substantial part of

the events or omissions giving rise to Plaintiffs' claims occurred here. In addition, the

Administrative Procedure Act (APA) confirms this District is the proper venue as

described above pursuant to 5 U.S.C. § 703.  No real property is involved in this action.

27.  The Defendants are agencies or officers of the United States of America and are sued in

their official capacities.


## THE FACTS

### Accessing Veteran Records Through Government Records Repositories

28.  The military branches of United States government store military veteran records across

a network of more than sixty (60) government records facilities spanning the nation.

These facilities include: the National Personnel Records Center ("NPRC") in St. Louis,

Missouri; the Army Human Resources Command ("AHRC") in Ft. Knox, Kentucky; Headquarters, U.S. Marine Corps ("HQMC") in Quantico, Virginia; the Navy Personnel Command ("NPC") in Millington, Tennessee; the Air Force Personnel Center ("AFPC") at Randolph AFB, Texas; the Air Reserve Personnel Center ("ARPC") at Buckley AFB, Colorado; Coast Guard Personnel Service Center ("PSC"), Washington, DC, and more than 50 individual State Adjutant General offices located in their respective states and territories. Many veteran records are located at more than one facility. All records prior to the mid-1990s are available in hard-copy form and are maintained primarily by the National Personnel Records Center (NPRC) in St. Louis, Missouri. More recent records are maintained by the various military branches themselves, and can generally be accessed through DPRIS. All records of US military personnel are maintained and controlled by Defendant DoD.

29.  A number of these facilities, including the NPRC, HQMC, NPC, and ARPC have maintained "client service windows" (or an equivalent research rooms or service desks) in which a military veteran or his or her authorized representative may appear in person at the facility and request his or her records directly. The facility is then tasked with making that veteran's (or the veteran's representative) request a priority and providing his or her records the same day the request was made or very soon thereafter depending upon the staffing at the facility and the volume of walk-in/priority requests received.

30. TOUCHSTONE also acts as a third-party verifier. TOUCHSTONE digitally signs and locks all retrieved electronic copies and affixes a holographic seal with a $25,000 authenticity guarantee to all physical copies attesting that they were retrieved directly from the government facility. This verification prevents criminals from tampering with or forging military records in order to claim false valor or fraudulently receive veteran benefits such as medical care, employment, home loans, educational benefits, etc.  In some instances, private employers and institutions, including overseas military contractors,

require veteran applicants to retrieve their records through TOUCHSTONE in order to verify their service.

31. In more than 10 years of service, TOUCHSTONE has helped more than 80,000 U.S. military veterans retrieve their verified military records safely and expediently from the various military records facilities across the nation. At times TOUCHSTONE expends great additional time and expense in tracking down records when the government itself is unable to do so.

32. TOUCHSTONE has improved upon the efficiency of militarily records facilities processes by developing a proprietary, online-based request form utilizing an E-signature capability in full compliance with the Electronic Signatures in Global and National Commerce Act ("E-Sign"), 15 U.S.C.A. §§ 7001-7031 (Supp. 2001). Once completed and signed, the digital form is automatically submitted to researchers at multiple facilities immediately, eliminating the uncertainty and delay in printing and mailing/faxing request forms to each separate facility that may contain the veteran's records. The aforesaid form is fully compliant under the Privacy Act.

33. TOUCHSTONE has also pioneered and made commercially available a portable, verifiable version of a veteran's military separation documents issued as a VetRecs Card$^{TM}$. The VetRecs Card has been well received by the military community and offers significant technological and security advantages as compared to the Veteran Administration's own veteran's card. TOUCHSTONE acts as a third-party verifier for a veteran's military separation documents, and will only certify records and issue VetRecs Cards for records received *directly* from the government records facility.  TOUCHSTONE will not accept a veteran's own physical copies of his military separation documents for a VetRecs Card because TOUCHSTONE, as well as any other company or agency receiving such copies, has no way to verify that such copies have not been forged, altered, or otherwise manipulated.

34. TOUCHSTONE's researchers previously received responses to client record requests for recent separations (generally post-1992) within hours when same were submitted at the NPRC and AHRC (St. Louis, Missouri), ARPC (Denver, Colorado), NPC (Millington, Tennessee), and HQMC (Quantico, Virginia).

35. In 2011, Army Human Resources Command (AHRC), under the direction of the Department of Defense 2005 Base Closure and Realignment Commission, consolidated and moved its elements in Alexandria, Virginia; Indianapolis, Indiana; and St. Louis, Missouri to a new facility at Fort Knox, Kentucky. Upon the opening of the new consolidated facility, TOUCHSTONE redirected its pertinent requests to this records repository.

36. Through its Defendant PETER A. ROBINSON, Defendant AHRC has refused to accept veteran requests submitted through TOUCHSTONE's secure online submission system that utilizes e-signatures despite the previously independent agencies of AHRC having accepting these requests for processing and fulfillment. TOUCHSTONE repeatedly asserted verbally and in writing to AHRC that their facility is legally required to accept TOUCSTONE's requests under the E-Sign Act and The Privacy Act. All other government military records facilities readily accept TOUCHSTONE's veteran request forms signed via an e-signature.

37. TOUCHSTONE repeatedly requested in writing the AHRC to provide legal authority to support its denial to process TOUCHSTONE's requests. AHRC failed to provide such legal authority, citing instead internal "Command Policy" as reason for the denials. Defendant ROBINSON went on to vilify TOUCHSTONE's practices by stating in his e-mail dated May 21, 2012, "[i]t's likely your company thrived by taking advantage of the uninformed veteran and the lazy federal employee."

38. Subsequently through its agent Defendant ROBINSON, Defendant AHRC circumvented veteran requests through TOUCHSTONE's services, directly reaching out to TOUCHSTONE's clients and writing to them that "this command does NOT do business

9

with Touchstone or its affiliates." Such repeated acts have harmed TOUCHSTONE's established positive reputation as a trusted third party verifier and resulted in financial harm to the company and its positive reputation.

39. Starting in late 2016, after once again requesting Defendant AHRC comply with the law and accept and process TOUCHSTONE's requests on behalf of its veteran clients, the government facilities HQMC and NPC under the auspices of the Defendant DoD have also suddenly refused to process veteran requests submitted by TOUCHSTONE's researchers working at those facilities by returning those requests within hours as had been the previous policy. Now returns by HQMC and NPC of TOUCHSTONE's submitted requests occur within weeks or even months after submission. It appears that Defendants D0D and AHRC, through its Defendant ROBINSON or another person at their/his direction, has contacted these other government records facilities in an effort to further damage TOUCHSTONE's business and dissuade cooperation when handling TOUCHSTONE's requests on behalf of its veteran clients.

**Accessing Veteran Records Through DPRIS**

40. The information that is accessible through the DPRIS (Defense Personnel Records Information Retrieval System) Website is drawn from a much larger system of records operated by Defendants known as the Defense Eligibility and Enrollment Reporting System ("DEERS").

41. DEERS is a massive personnel and human resources database maintained by Defendants for the purpose of determining eligibility for benefits, for issuing DoD badges and identification cards, and for other similar purposes.

42. Defendant DoD has issued a System of Records Notice ("SORN") for DEERS which the most recent version was published in the Federal Register on July 27, 2016 [81 FR 49210].

43. Although required by the Privacy Act, a veteran's designated representative is not included within the categories of individuals covered by the DEERS system.

44. Under the section "Routine uses of records maintained in the (DEERS) system, including categories of users and the purposes of such uses:[…]" set forth in 80 FR 68304 (11-4-2015), the veteran's representative is NOT specifically identified as a permitted user for the purposes of use and access. However, this same section permits the veteran's designated representative access and use by inclusion of the language - "[i]n addition to those disclosures generally permitted under 5 U.S.C. 552a(b) of the Privacy Act of 1974 as amended …" 80 FR 68304.

45. From the DPRIS website: "The Defense Personnel Records Information Retrieval System (DPRIS) is an electronic gateway that allows authorized users to access the Services' Official Military Personnel File (OMPF) and Joint Services Records Research Center (JSRRC) repositories online in a secure and efficient manner. DPRIS is focused on improving accessibility to OMPF information within the Services' records management systems and the JSRRC for the Department of Defense (DoD), Service Members, Veterans, and authorized Federal and State government agencies." […]. "In 2008, DPRIS opened its doors to federal agencies with a business need for access to the Services' OMPF repositories." Furthermore, "DPRIS enables most requests to be processed in near real-time." DPRIS has not specifically included a veteran's designated representative as an approved user of DPRIS although The Privacy Act of 1974 as amended permits this representative access and use upon authorization by the veteran.

46. From the DPRIS User Guide, "DPRIS allows routine authorized Users of OMPF information  to obtain copies of the digital images contained in the Services' personnel systems within 48 hours, through a single internet-based interface. Access to the Services' digital OMPF repositories has also been granted to on-site liaison office staff and to agency representatives for walk-in visits to the Service Personnel Command sites. In the past, information from these records was typically provided via hardcopy, with requests for

11

information and responses to such requests mailed through the U.S. Postal Service. Regardless of the form in which the information is obtained, all Users are required by law to safeguard the information contained in the OMPF. The owners of the OMPF information are required to keep a record pertaining to disclosure of the information, as directed by the Privacy Act of 1974 and Health Insurance Portability and Accountability Act (HIPPA)."

47. As a result of AHRC's intentional and willful misconduct, and the changes in "policy" at HQMC and NPC on or about April 5, 2017, TOUCHSTONE sought access to DPRIS as designated representative of the veteran by filling out the requisite online application located on the DPRIS website.

48. On November 2, 2017, after receiving no response to its application over a period of nearly seven months, TOUCHSTONE sent a follow-up request by sending an e-mail to the DPRIS Help Desk at the supplied e-mail address: *dodhra.dodc-mb.dmdc.mbx.dpris-helpdesk@mail.mil.*

49. On November 29, 2017, after receiving no response from either the initial application or through the Help Desk, TOUCHSTONE mailed a Priority Mail letter to the Under Secretary of Defense's Personnel and Readiness office located at 4000 Defense Pentagon, Washington DC requesting a response to TOUCHSTONE's DPRIS application, or, in the case of a denial, a written explanation of the denial including legal authority and an avenue for an appeal as required by Defendant DoD in its own department's PRIVACY PROGRAM regulation at *DoD 5400.11-R §C3.2.3 et. seq.*

50. As of the date of this filing, TOUCHSTONE has received no response from the initial DPRIS application, the DPRIS Help Desk inquiry, or the Under Secretary of Defense's office, compelling TOUCHSTONE to bring this action before the court.

**CAUSES OF ACTION**

### I. Violation of the Privacy Act

51.  Plaintiffs repeat and reallege the allegations set forth in paragraphs numbered 1 through 50 of the within Amended Complaint in their entirety, as if set forth herein at length.

52. Title 5, The Code of Federal Regulations ("CFR"), governs the administration and procedures of government recordkeeping facilities and states which requests are governed by the Privacy Act. Section 293.406 of the CFR defines the disclosure of records: "Disclosure as used here means the furnishing of the record to someone other than the individual to whom the record pertains, *his/her designated representative*, or to an agency official who needs the information in the performance of official duties. Disclosure of information from this file system shall be made only as permitted by the Privacy Act (5 U.S.C. 552a(b)) and, with regard to the routine use provisions of that section, only under a routine use published by the Office for the system of records covering these records." (*emphasis added*).

53. Section 297.204 of the CFR – "Access by the representative of the data subject" – clearly states that records may be provided to the representative of the data subject. It reads, in part, that "[a] record may be disclosed to a representative of the individual to whom the record pertains after the system manager receives written authorization from the individual who is the subject of the record."

54. Plaintiff TOUCHSTONE also has a right to access veteran records as designated agent under the Department of Defense Privacy Program. The Defendant DoD has clarified agency obligations within its Privacy Program and promulgated regulations for compliance with the Privacy Act. *See* DoD 5400.11-R.  Disclosure is permitted under this regulation at DL1.9 where Individual Access is defined as: "Access to information pertaining to the individual by the individual *or his or her designated agent* (*emphasis supplied*) or legal guardian." *See also* DoD 5400.11-R §C3.1. et seq.

13

55. Plaintiff TOUCHSTONE acts under a limited Power of Attorney duly executed by the co-plaintiff veterans which the veteran has specifically authorized TOUCHSTONE to acquire his or her records on his or her behalf.

56. The Privacy Act establishes a code of fair information practices that governs the collection, maintenance, use, and dissemination of information about individuals that is maintained in systems of records by federal agencies.

57. The Privacy Act states, in part: "Whenever any agency . . . refuses to comply with an individual request under subsection (d) (1) of this section [the individual may bring a civil action against the agency]." 5 U.S.C. § 552a subsection (g) (1) (B).

58. In every case, TOUCHSTONE's authority is contained in a written declaration made under penalty of perjury by the co-plaintiff veteran and can be confirmed with the veteran himself or herself.

59. Unlike a Freedom of Information Act (FOIA) request made by a third party, Plaintiff TOUCHSTONE acts as both agent and attorney-in-fact for the co-plaintiff veteran and is given full authority to acquire records as if the co-plaintiff veteran himself or herself were present and making the request.

60. By denying Plaintiff TOUCHSTONE access to co-plaintiff veteran's records on the said veteran's behalf under his or her power of attorney, Defendant AHRC and Defendant ROBINSON, have and continue to violate the Privacy Act of 1974, 5 U.S.C. § 552a.

61. Plaintiff TOUCHSTONE's lawful authority as granted by the co-plaintiffs is assured specifically under the Privacy Act. Subsection (b) of the Privacy Act states that, "No agency shall disclose any record which is contained in a system of records by any means of communication to any third person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains … " (*emphasis supplied)*. Additional exceptions are also available to permit access. *See* 5 U.S.C. § 552a subsection (b) – Conditions of Disclosure.

14

62. Under the Privacy Act, courts can enjoin the agency from withholding records and order their production to the individual.  See 5 U.S.C. § 552a subsection (g) (3) (A).

63. Damages may also be awarded for a Privacy Act violation when the refusal to allow access has been found to be "intentional or willful." 5 U.S.C. § 552a subsection (g) (4) (A).

64. Beyond refusing to honor Plaintiff TOUCHSTONE's requests as designated representative of the co-plaintiff veteran and therefore each co-plaintiff themselves, Defendant AHRC employees, under the direction of Defendant ROBINSON, repeatedly, intentionally interfered and circumvented TOUCHSTONE's service to its clients and also by contacting client veterans directly in order to prevent TOUCHSTONE from fulfillment of its contracted services that inflicted both actual financial harm as well as damaging its earned positive commercial reputation.

## II.    Violation of Administrative Procedure Act (APA)
### Unlawful failure to disclose information to a lawfully
### designated representative under the Privacy Act

65.  Plaintiffs repeat and reallege the allegations set forth in paragraphs numbered 1 through 64 of the within Amended Complaint in their entirety, as if set forth herein at length.

66. The APA provides for judicial review of agency actions causing legal harm or adverse effects to a plaintiff. 5 U.S.C. § 702. The APA requires the Court to deem unlawful and set aside agency actions, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2) (A). The APA also requires the Court to compel agency action that has been unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

67. Defendants have taken final agency action by adopting and implementing rules and procedures that govern the disclosure of Private Information through the DPRIS Website. Those rules and procedures are described in the DPRIS Website User Guide, the DPRIS Website Privacy Act Statement, and other official statements of Defendants

and their agents, officials or employees. The final agency action is also embodied and

evidenced by the operation of the DPRIS Website itself.

68. Defendants have taken final agency action by adopting and implementing rules and

procedures that govern the disclosure of Private Information through the military branch

repositories, and have denied record access and/or have deliberately delayed access to

the individual's designated representative Plaintiff TOUCHSTONE and therefore to the

co-plaintiffs.

69. These Defendant departments, agencies and controlled military branch repositories have

engaged in actions which are "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law" within the meaning of the APA because same violate the

Privacy Act, 5 U.S.C. § 552a.

70. In particular, Defendants' actions violate the Privacy Act's requirement that an

individual's records contained in a government system of records may not be disclosed

to any third party without the individual's express written consent, unless for a permitted

use specifically enumerated in the Act. 5 U.S.C. § 552a subsection (b).  All of Plaintiff

TOUCHSTONE's requests are submitted to the military branch repositories and DPRIS,

in writing, sworn to, and signed by their clients including each co-plaintiff herein,

thereby providing the express written consent in full compliance with the Privacy Act.

71. Defendants' actions have had adverse effects the Plaintiff TOUCHSTONE and their

clients, including co-plaintiffs. Once TOUCHSTONE's "within-hours" access to the

records of its clients was rescinded, TOUCHSTONE's business has had an overall

reduction of hundreds of thousands of dollars, resulted in negative on-line reviews by

clients and has crippled its ability to develop and access new markets and services.

72. Without prompt access to their records, TOUCHSTONE's clients including co-plaintiffs

have lost job opportunities, missed home closings, failed to obtain military funeral honors,

failed to obtain discounts afforded former military service personnel, and were unable to

obtain other benefits which require the prompt verification of military service.  As a result

of Defendants' intentional and willful conduct, Plaintiff TOUCHSTONE's inability to

acquire records in a timely manner has resulted in actual damages, including but not

limited to chargeback & refunds with related expenses, as well as damaging

TOUCHSTONE's business reputation. TOUCHSTONE and its clients including co-

plaintiffs also suffer harm because they are deprived of substantive and procedural rights

guaranteed to them by the Privacy Act and the APA.

73. Plaintiffs are entitled to judicial review because TOUCHSTONE and co-plaintiff

individuals have suffered legal wrongs, have been adversely affected, and remain

aggrieved by Defendants' final actions. Due to the lack of any administrative remedies

specifically set forth in any rule or regulation of or by Defendants,  Plaintiffs have no

other adequate remedy for these violations. The Defendants' unlawful rules and

procedures governing the release of the subject military records to a duly appointed

designated representative as permitted by the Privacy Act continue and remain unchanged

resulting in direct and immediate harm to TOUCHSTONE and the clients that it serves,

including individual co-plaintiffs.


### III.   Violation of Administrative Procedure Act
### Unlawful failure to disclose information to a lawfully designated
### representative in a timely manner under the Privacy Act

74. Plaintiffs repeat and reallege the allegations set forth in paragraphs numbered 1 through

64 , and paragraph 66 of the within Amended Complaint in their entirety, as if set forth

herein at length.

75. Defendants have taken final agency action by adopting and implementing rules and

procedures that govern the disclosure of Private Information through the military branch

repositories, and have denied timely record access and/or have deliberately delayed

access to the individual's designated representative TOUCHSTONE and the co-plaintiffs

themselves.

76. These Defendant departments, agencies and controlled military branch repositories have engaged in actions which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" within the meaning of the APA because same violate the Privacy Act, 5 U.S.C. § 552a.

77. In particular, Defendants' actions violate the Privacy Act's requirement that an individual's records contained in a government system of records may not be disclosed to any third party without the individual's express written consent, unless for a permitted use specifically enumerated in the Act. 5 U.S.C. § 552a subsection (b).  All of Plaintiff TOUCHSTONE's requests are submitted to the military branch repositories and DPRIS, in writing, sworn to, and signed by their clients, thereby providing the express written consent in full compliance with the Privacy Act.

78. Defendants' actions of delay have had adverse effects the Plaintiff TOUCHSTONE and their clients, including individual co-plaintiffs. Once TOUCHSTONE's "within-hours" access to the records of its clients was rescinded, TOUCHSTONE's business has had an overall reduction of hundreds of thousands of dollars, resulted in negative on-line reviews by clients and has crippled its ability to develop and access new markets and services.

79. With delayed access to their records, TOUCHSTONE's clients, including individual co-plaintiffs have lost job opportunities, missed home closings, failed to obtain military funeral honors, failed to obtain discounts afforded former military service personnel, and were unable to obtain other benefits which require the prompt verification of military service.  As a result of Defendants' intentional and willful conduct, Plaintiff TOUCHSTONE and individual co-plaintiffs'  inability to acquire records in a timely manner has resulted in actual damages, including but not limited to chargeback & refunds with related expenses, as well as damaging TOUCHSTONE's business reputation, and other damages as yet to be fully ascertained. TOUCHSTONE and its clients, including co-plaintiffs,  also suffer harm because they are deprived of substantive and procedural rights guaranteed to them by the Privacy Act and the APA.

80. Defendants' failures to comply with Plaintiff TOUCHSTONE and co-plaintiffs' lawful requests in a timely manner constitute willful denials of access to the clients' designated representative and to the individual co-plaintiffs themselves.

81. . Plaintiffs are entitled to judicial review because TOUCHSTONE and the co-plaintiffs have suffered legal wrongs, have been adversely affected, and remain aggrieved by Defendants' final actions. Due to the lack of any specific administrative remedies, Plaintiffs have no other adequate remedy for these violations, but to pursue the within legal action. The Defendants' unlawful rules and procedures governing the release of the subject military records to a duly appointed designated representative as permitted by the Privacy Act continue and remain unchanged resulting in direct and immediate harm to TOUCHSTONE and the clients that it serves, including individual co-plaintiffs.


IV.    **Violation of Administrative Procedure Act**
**Failure to provide an appeal process as required by the Privacy Act**

82. Plaintiffs repeat and reallege the allegations set forth in paragraphs numbered 1 through 81 of the within Amended Complaint in their entirety, as if set forth herein at length.

83. The Privacy Act, 5 U.S.C. § 552a subsection (f) (4), requires the Defendants to provide an appeal process for the denial of any Privacy Act request.

84. Defendant AHRC violated the Privacy Act when it failed to provide such an appeal procedure to Plaintiff TOUCHSTONE and the individual co-plaintiffs for each occurrence when it denied access to TOUCHSTONE'S clients' records as their designated representative and attorney-in-fact.

85. Defendants' actions and/or failures to act in this regard is final agency action and are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" within the meaning of the APA, 5 U.S.C. § 706(2) (A), because same violates the Privacy Act, 5 U.S.C. § 552a subsection (f) (4). Defendants have likewise "unlawfully withheld"

action in regard to this appeal process and should be compelled to do so as required by

law. 5 U.S.C. § 706(1).

86.  Plaintiff TOUCHSTONE, in service to its clients, and individual co-plaintiffs have

suffered legal wrongs, have been and remain adversely affected by Defendants' actions

and/or failures to act in this regard because a  lack of any proper appeal procedure.

Plaintiff TOUCHSTONE has asked for relief from these Defendants and/or legal support

for Defendants' actions or lack thereof, but has received no formal substantive reply.

There is no other alternative than to proceed with this action because Plaintiffs have been

deprived of substantive and procedural rights guaranteed by the Privacy Act.

87. Plaintiffs are entitled to judicial review because TOUCHSTONE and individual co-

plaintiffs have suffered legal wrongs, have been adversely affected, and remain aggrieved

by Defendants' final actions and/or failures to act. Plaintiffs have no other adequate

remedy for these violations which continue and remain unchanged resulting in direct and

immediate harm to TOUCHSTONE and the clients that it serves, including individual co-

plaintiffs.


### V.      Violation of Privacy Act
**Compensation for actual damages suffered by Plaintiff TOUCHSTONE and Individual Co-Plaintiffs**

88. Plaintiffs repeat and reallege the allegations set forth in paragraphs numbered 1 through

87 of the within Amended Complaint in their entirety, as if set forth herein at length.

89. Defendants have violated Plaintiff TOUCHSTONE and individual co-plaintiffs' rights

under the Privacy Act, as TOUCHSTONE is its clients' duly appointed designated

representative and attorney-in-fact, under 5 U.S.C. § 552a subsection(b), i.e.  by failing to

comply with the Privacy Act's requirement to permit TOUCHSTONE to access its

client's records upon the clients' including co-plaintiffs' prior written consent;  making

the subject records accessible through the DPRIS Website; the rescission of timely access

i.e. "within hours" to Touchstone for its clients' including individual plaintiffs' records held at AHRC (St. Louis), ARPC, HQMC and NPC; the persistent failures to act in any reasonable timely manner; the denial of access in its entirety to records held at AHRC; and by failing to provide an appeal process for denial of access as required by 5 U.S.C. § 552a(f)(4).

90. In committing these violations of the Privacy Act, Defendants have acted intentionally and willfully within the meaning of 5 U.S.C. § 552a subsection (g) (4). Defendants have repeatedly been specifically advised by TOUCHSTONE of its authorized legal authority from the veteran to secure timely access to the client's records. Defendants have failed to respond in any meaningful way and/or to take any corrective and remedial action.

91. As a result of Defendants' intentional and willful conduct, Plaintiff TOUCHSTONE's inability to acquire the subject records by being denied access and/or in a timely manner has resulted in actual damages, including but not limited to chargeback & refunds with related expenses. Plaintiff TOUCHSTONE and individual co-plaintiff have suffered adverse effects and actual damages because of Defendants' refusal and failure to comply with the applicable law.

92. Additionally, Plaintiff TOUCHSTONE has been subject to intentional and willful conduct by Defendant ROBINSON and by those whom he supervises at Defendant AHRC to directly and aggressively deny any and all efforts of Plaintiff to access the government records in order to serve its clients. Defendant ROBINSON's (and others) willful and intentional conduct has metastasized to DoD, HQMC, NPC, and other DoD repositories thereby further damaging TOUCHSTONE's business revenue and reputation.

93. As a result of Defendants' intentional and willful conduct, Plaintiff TOUCHSTONE's inability to acquire records at all and/or in a timely manner has resulted in actual damages, including but not limited to chargeback & refunds with related expenses, as

well as damaging TOUCHSTONE's business reputation in the market. These issued

chargebacks and refunds and other losses constitute actual damages within the meaning

of 5 U.S.C. § 552a subsection (g) (4) (A).

94. Plaintiff TOUCHSTONE and individual co-plaintiffs are entitled to recover from

Defendants the actual damages they have suffered which are in no case less than

$1,000 per violation. 5 U.S.C. § 552a subsection (g) (4) (A).

## PLAINTIFFS' PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court award and enter the following

relief to Plaintiffs:

1. That process in due form of law according to the practice of this Court may issue

    against said Defendants.

2. That a decree of judgment may be entered in favor of Plaintiffs and against Defendants,

    jointly, severally and/or individually for the minimum amount of Plaintiffs' actual

    damages that continue to accrue and are to be established by separate application,

    motion, hearing, or at trial, together with interest, costs, and reasonable attorney's fees

    established by statute.

3. That the Court further declare the rights, remedies and legal relations of each Plaintiff

    to each Defendant herein in regard to the access and procurement of veteran's

    government records under 5 U.S.C. § 552a - the Privacy Act of 1974 as amended and

    5 U.S.C. §§ 701-706 – the Administrative Procedure Act (APA) pursuant to 28 U.S.C.

    § 2201 seeking declaratory judgment that adjudges, decrees and order:

    A        That the DPRIS Website, as currently operated, violates the APA and the

            Privacy Act by failing to permit access by a veteran's designated representative and

            therefore to the veteran himself/herself;

22

B.     That Defendants' failure to provide timely access to Plaintiffs' designated

representative TOUCHSTONE to obtain veteran's government records at record

repositories under their control violates the APA and the Privacy Act;

C.     That Defendants are prohibited from discriminating against Plaintiff

TOUCHSTONE and therefore the individual co-plaintiffs in their responses to

Privacy Act requests made by client  designated representative TOUCHSTONE,

and directing complete compliance   by   said   Defendants   as   previously

undertaken by them "within hours" upon receipt of such requests by the

issuance of a preliminary injunction to avoid further continuing  damages  and

irreparable immediate harm to Plaintiffs;

D.     That Defendants implement immediate access to DPRIS to TOUCHSTONE as

the duly authorized designated representative of the veteran which is permitted

by the  Privacy Act;

E.     That Defendants have violated the APA and Privacy Act by unlawfully denying

and/or intentionally and willfully delaying requests made by TOUCHSTONE,

as a duly appointed designated representative of its client veterans; including

individual co-plaintiffs;

F.     That Plaintiffs have sustained actual damages as a result of the above

declared relief in amount not less than $1,000 per violation as provided by the

Privacy Act, 5 U.S.C. § 552a subsection (g)(4) (A);

G.     That Defendants immediately comply and release to Plaintiff TOUCHSTONE

all of the previously submitted Privacy Act requests for specific government

records which are currently outstanding that are in accord with the ordered

relief herein;

H.      Pursuant to 5 U.S.C. 552a subsection (g) (3) (A) of the Privacy Act, the

Defendants are enjoined from withholding records and ordered to allow access

and produce to the individual applicant for such government records that shall

include their designated representative TOUCHSTONE after the Defendants

have an opportunity to be heard in any preliminary injunction hearing convened

by the Court.

4.      Award Plaintiffs costs incurred in this action pursuant to 28 U.S.C. § 2412 and

costs & reasonable attorney fees as provided for by the Privacy Act, 5 U.S.C. §

552a subsection (g)(4)(B) as determined by the Court;  and

5.      That this Court will grant Plaintiffs such other and further relief as may be just

and proper.

Dated:   August 20, 2018
            Lebanon, New Jersey

s/Timothy D. Barrow
Timothy D. Barrow, Esq.
Bar I.D. TB8049
148 Main Street
Lebanon, NJ 08833
Tel: (646) 613-8434 / (908) 236-2229
Attorney for Plaintiffs